UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LUDA CHRISTINE HAYWARD LEFORGE, | ) ) ) | |
| Plaintiff, | ) ) | 1:11-cv-00526-RLY-DKL |
| vs. | ) ) ) | |
| FEIWELL & HANNOY, P.C., | ) ) | |
| Defendant. | ) | |

**ENTRY ON REQUEST FOR ATTORNEY'S FEES AND COSTS**

On January 20, 2015, a jury determined that Defendant, Feiwell & Hannoy, P.C. ("F&H") violated the Fair Debt Collection Practices Act ("FDCPA"). The jury awarded Plaintiff, Luda Christine Hayward LeForge ("LeForge"), $1,000.00 in statutory damages and $4,500.00 in actual damages. The court instructed the parties to try to come to an agreement on the attorney's fees and costs. The parties have not been able to do so. As such, LeForge has filed a motion for attorney's fees and costs and a supplemental motion. F&H objects to the amount of the fees and costs. For the reasons stated below, Plaintiff's motions are **GRANTED in part** and **DENIED in part**.

**I.    Background**

LeForge seeks an award of $37,415.00 in attorney's fees, $576.72 in costs and nontaxable expenses to counsel, and $23,528.31 in costs to LeForge. F&H objects and

1

counters that a reasonable calculation of the attorney's fees in this matter is $11,482.50[1] and a reasonable calculation of the costs and nontaxable expenses is $926.72. The court will first consider the request for attorney's fees and then examine the requests for costs.

## II.     Standard

Under the FDCPA, a debt collector who violates the act, is liable to the successful claimant for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(1)(3). The Seventh Circuit has found that the statute makes an award of such fees mandatory. *See Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995).

The touchstone for a district court's calculation of attorney's fees is the lodestar method, which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Id.* at 856 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)). If necessary, the district court has the flexibility to "adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Id.* at 856-57. "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999) (quoting *Bankston v. Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995)).

## III.    Discussion

### A.     Attorney's Fees

---

[1] F&H did not include the supplemental fee statement in this determination. F&H did not object to that motion seeking $3,330.00 in attorney's fees.

### 1. Are Mr. Murray's fees reasonable?

A reasonable attorney's fee is defined as "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Mr. Kyle Murray's hourly rate is $200.00 and his associate, Andrew Ferguson's, rate is $150.00 per hour. F&H does not object to the hourly rates of Mr. Murray or his associate; however, F&H objects to certain hours that Mr. Murray and/or his associate billed. Specifically, F&H asks the court to strike hours related to: (1) administrative and clerical tasks, (2) Plaintiff's attempt to reopen discovery, and (3) hours spent researching based upon an unfamiliarity with the FDCPA practice and Seventh Circuit authority. The court will discuss each in turn.

### a. Administrative and clerical tasks

F&H asserts that the court should strike the hours devoted to administrative and clerical tasks. In support, F&H relies on *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). In *Spegon*, the Seventh Circuit found that the district court did not abuse its discretion when it disallowed the time spent on "simple administrative tasks that easily could have been performed by a full-time secretary." *Id.* Specifically, those tasks included "updating her 'case list' and calendar with the status of [the] case and holding office conferences with a paralegal regarding a paralegal's communications with the court's minute clerk." *Id.* The court noted that these services were not the type an attorney would normally bill for nor did they contribute to the further of Spegon's interest in the case. *Id.* Relying on that case, Defendant asks the court to not award fees for the following:

- 11/12/14: Conference with Kyle [Murray] regarding settlement conference and pre-trial conference. Begin preparation of exhibit binders for trial. 2.80 ($420.00)

- 11/12/14: Review of F&H's objections to LeForge's motions in limine and jury instructions. Review of F&H's motions in limine and jury instructions in preparation of final pre-trial hearing. Conference with Andrew Ferguson regarding trial binder preparation and preparation of exhibits for opposing counsel, witnesses, and Court . . . 3.10 ($620)

- 1/16/2015: Preparation for trial. Prepare materials for case presentation. Review juror questionnaires. 2.20 ($330.00)

- 1/19/2015: Travel to Indianapolis to attend Trial. Meet with clients to discuss testimony at trial. Preparation with Kyle Murray for opening arguments and witness examination. 7.50 ($1,125.00); and

- 1/19/2015: Exhibit binder review. Cross-examination review. Open statement and closing argument review. Trip to Indianapolis . . . 10.50 ($2,100.00)

The above tasks are clearly not clerical or administrative tasks, but rather detail work that an attorney would do in anticipation of the final pretrial conference and trial. Also, each entry furthers LeForge's interest in this matter and is entirely different from those excluded in *Spegon*. For example, travelling to Indianapolis for the trial is clearly a task that a secretary could not perform in this matter. Furthermore, Mr. Murray states in his affidavit that he has already reduced the time billed for those tasks that could be

deemed administrative tasks. As such, the court overrules F&H's objection to these entries and finds them to be reasonable.

### b.     Reopening of discovery

Second, F&H asks the court to strike those hours spent in an attempt to reopen discovery, which the court rejected. According to F&H, such efforts were "futile" and should be excluded. The court disagrees. Plaintiff was pro se during the discovery period of this case. Because she did not make proper disclosures evidence concerning her claimed damages would not be permitted to be introduced at trial. Mr. Murray knew that this would be the result, and in vigorously representing his client, he sought to amend his client's pro se responses to avoid this consequence at trial. Simply because the court did not find in LeForge's favor does not make such an effort futile. Rather, Mr. Murray did his best to represent his client's interests. Thus, the court overrules F&H's objection to those entries and finds them to be reasonable.

### c.     Hours related to research

Finally, F&H argues that the court should strike or reduce those hours related to research due to an unfamiliarity with the FDCPA practice or Seventh Circuit authority. According to F&H, these fees are "excessive, redundant or otherwise unnecessary." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001). F&H does not explain why the entries it objects to are excessive, redundant or unnecessary, nor does F&H explain why such research is the result of a lack of experience in the FDCPA practice or unfamiliarity with Seventh Circuit law. This is simply an unsupported

5

conclusion made by the F&H. Thus, F&H's objection is simply to time spent researching without any explanation on why the time was excessive or unnecessary.

Time spent researching is clearly in the interest of LeForge; it is a necessary part of the practice of law, whether an attorney normally practices in that area or not. As the Seventh Circuit has stated, "No matter how experienced a lawyer is, he has to conduct (or have conducted for him) research to deal with changes in the law, to address new issues, and to refresh his recollection." *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 570 (7th Cir. 1992). In reviewing Mr. Murray's time sheet, the court does not see any entries in which Mr. Murray or his associate spent an unreasonable amount of time researching an issue. As such, the court overrules F&H's objection and finds that the time Mr. Murray and his associate, Mr. Ferguson, spent researching is reasonable.

**2.     Should Mr. Murray's fees be reduced due to lack of success?**

F&H also argues that Mr. Murray's fees should be reduced by fifty percent due to the lack of success in light of the demand and prior settlement offers and the lack of complexity in this matter. F&H submits evidence concerning the parties' settlement communications. In December of 2013, LeForge, proceeding pro se, rejected a settlement offer of $1,500.00 and instead demanded $1.5 million. This $1.5 million dollar settlement proposal was submitted to F&H again on April 10, 2014, by Mr. Murray. On October 28, 2014, Mr. Murray wrote a $1 million settlement proposal to F&H. On November 14, 2014, F&H offered to settle the case for $20,000.00 plus attorney's fees and costs to be determined by the court. At trial, the jury awarded LeForge $5,500.00.

F&H, relying on Seventh Circuit case law, argues that "substantial settlement offers should be considered by the District Court as a factor in determining an award of reasonable attorney's fees even when Rule 68 does not apply." *Moriarty v. Svec*, 233 F.3d 955, 976 (7th Cir. 2000); *see also Cooke v. Stegani Management Services, Inc.*, 250 F.3d 564, 570 (7th Cir. 2001). Moreover, an offer "is substantial if . . . the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Id.* In *Cooke*, the Seventh Circuit upheld the district court's fifty percent reduction of the plaintiff's fee petition when Cooke requested nearly $300,000 from the jury and walked away with $7,500.

LeForge responds by citing a more recent case from the Seventh Circuit showing that such reasoning only applies when a nominal award is given. *See Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). In that case the Seventh Circuit stated:

> In cases which involve more than a nominal award, we have rejected the notion that the fee award should be reduced because the damages were smaller than a plaintiff originally sought or that the fee award might, in fact, be more than the plaintiff's recovery.

*Id.* In *Enoch*, the Seventh Circuit did not specifically overrule *Cooke* where the plaintiff's recovery was clearly not nominal.

Here, LeForge's recovery was also not nominal. The jury awarded her the maximum statutory award of $1,000 and an additional $4,500 for her actual damages. Thus, the court must determine whether to follow *Cooke* or *Enoch*. Because *Enoch* is more recent and rejects the holding of *Cooke*, the court will follow it. Thus, the court

7

will not reduce the attorneys' fees based on any apparent lack of success. Next, the court will determine what costs, if any, Mr. Murray and LeForge are entitled to.

### B. Costs

#### 1. Mr. Murray's Costs

Mr. Murray seeks $576.72 in costs. F&H does not dispute his claimed costs and nontaxable expenses. Thus, the court awards Mr. Murray $576.72 in costs.

#### 2. LeForge's Costs

LeForge seeks $23,528.31 in expenses and costs. In her affidavit, Plaintiff states that she incurred the following out-of-pocket expenses as a result of this litigation:

| | |
|---|---|
| Paper, Ink, and Other Office Materials | $2,903.24 |
| Postage and Postal Services | $946.87 |
| Travel Expenses | $9,725.94 |
| Airfare and Parking | $6,300.00 |
| Pacer Account Charges | $79.40 |
| Prior Attorney Fees and Expenses | $3,222.86 |
| Court Filing Fees | $350.00 |
| **Total Expenses and Costs** | $23,528.31 |

F&H does not dispute the $350 cost for the filing fee in this matter; however, it disputes the remaining expenses. After analyzing the documentation submitted by LeForge, F&H asserts that LeForge and her counsel did not have a good faith basis to believe that she incurred $23,528.31 in out of pocket expenses "directly attributed to this litigation from April 9, 2011 to January 20, 2105. F&H asks the court to strike LeForge's request for

8

costs and expenses as a result. In the alternative, F&H asks the court to award LeForge no more than $2,668.11. The court will first consider the requested fees and basis for those requests and then will proceed to whether a lack of good faith existed warranting sanctions.

### a. Specific Requests

#### 1. Office Expenses and Postage

LeForge seeks payment for home office supplies including computer monitors, computer software, printers, phones, fax machines, paper, and ink. As F&H asserts, fees for paper, ink and other office materials are not recoverable because they are not fees that are typically billed to the client. *See Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984). As such, those fees are not recoverable. On the other hand, typically fees for postage are passed onto the client, and thus are recoverable. *See Dickinson v. Indiana State Election Bd.*, 817 F. Supp. 737, 753 (S.D. Ind. 1992); *see also Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 264 F. Supp. 2d 753, 779 (S.D. Ind. 2003) (awarding an amount for ordinary postage after finding overnight couriers were not reasonably necessary for the case); *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 68-70 (D.D.C. 2013). Defendant does not object to LeForge recovering for the necessary postage.

#### 2. Travel Expenses, Airfare, and Parking

In her affidavit, LeForge seeks $9,725.94 for travel expenses and $6,300.00 for airfare and parking. Her documentation showed $6,597.67 in travel related expenses after duplicate entries were removed from the calculation. Defendant objects to four of

9

the seven trips to Indianapolis claimed by LeForge and also objects to any recovery for flights for Plaintiff's husband, who is not a party to this litigation. The court agrees that travel for Mr. LeForge is not recoverable because he is not a party to this litigation. Thus, any costs incurred by him are not the responsibility of F&H. Now, it will turn to the seven trips to Indianapolis.

The seven trips to Indianapolis occurred in August 2010, July 2011, June 2013, July 2013, November 2013, November 2014, and January 2015. The trips required for court appearances were in June 2013, November 2014, and January 2015. F&H does not object to these three trips. Rather F&H objects to the August 2010 trip, July 2011, July 2013, and November 2013 trips because they were not required for this litigation. LeForge only provides an explanation for one of the four trips. According to LeForge, she travelled to Indianapolis in November 2013 for an interview with an attorney or firm. The court finds awarding expenses for that trip is unreasonable; LeForge could have interviewed a potential attorney over the phone rather than in person. The fact that she chose to do so in person is not an expense F&H should be expected to fund. Thus, LeForge cannot recover for the November 2013 trip.

LeForge requests travel expenses for a trip dating August 18-21, 2010. First, this trip is disallowed as it occurred nine months prior to this lawsuit. Second, the court has reason to believe that this trip was actually for business located in Warsaw, Indiana, approximately 135 miles from the Indianapolis airport. Although LeForge flew into Indianapolis, she drove 328 miles in her rental car and ate dinner in Warsaw on August 18 and 19. LeForge's hotel receipt does not show the city in which the hotel was

located.[2] Nevertheless, it is clear that she only had enough miles on her rental car to drive to Warsaw and back once. Thus, having had dinner there two nights in a row leads the court to conclude that LeForge indeed stayed at the Holiday Inn located in Warsaw. Finally, that receipt shows a group and conference number, which indicates that the travel was likely work-related rather than related to this litigation.

The next trip LeForge requests travel expenses for occurred from July 26-29, 2011. There is nothing on the docket in this case to suggest a reason for this trip. F&H suggests that this trip may have been for LeForge's deposition in the related action *LeForge v. BAC Home Loan Servicing*, 1:10-cv-00859-TWP-DKL. According to Filing Number 47 in that action, her deposition was scheduled for July 29, 2011. Whatever the reason may be, it was not travel required for this litigation, and thus F&H is not responsible for those expenses. Additionally, there is no explanation for LeForge's trip to Indianapolis from July 29, 2013 to August 1, 2013. Thus, the court cannot find that trip to have been required as part of this litigation and will not hold F&H responsible for the expenses incurred as a result of that trip.

### 3.    Prior Attorney Fees

LeForge also requests $2,342.86 for attorney's fees and costs incurred with her prior counsel. In support of this request, LeForge includes a letter dated December 5, 2011, which states that "You are responsible for reimbursing the costs immediately, and

---

[2] The hotel receipt stated: "Thank you for staying at Holiday Inn Express,          Indiana. . ." (Filing No. 156-5, at ECF p. 1). F&H alleges that the blank space where the city would be located was redacted by LeForge. LeForge did not respond to that allegation.

the attorney fees are to be paid out of any recovery that you might make in this case subsequent to [the attorney's] withdrawal." (Filing No. 156-3, at ECF p. 5). F&H argues that the fees should be disallowed because LeForge did not show the number of hours billed, the proposed rate, or the reasonableness of the hours expended.

 F&H is correct. As stated above, an award of attorney's fees involves the use of the lodestar method. *See Tolentino*, 46 F.3d at 651. The court cannot evaluate whether the fees are reasonable under that method without knowing the hourly rate charged and the number of hours expended on the case. As such, the court cannot award attorney's fees to LeForge's prior counsel nor to LeForge to pay to her former counsel.

### 4. Court Costs and Pacer Fees

 Pacer fees that are incurred to obtain official records for use in this case are recoverable costs. *See Thomas v. City of Peoria, Ill.*, No. 06-cv-1018, 2009 WL 4591084, * 2 (C.D. Ill. Dec. 3, 2009). LeForge did not submit any receipts to show what documents or cases she viewed on Pacer. LeForge, through her attorney, represented to the court that her use of Pacer was to obtain records in this matter and for research. The court has found numerous inconsistencies between the record and LeForge's affidavit. As such, it is skeptical of the Pacer costs as well. Without any documentation supporting these charges, the court will not award the costs of the Pacer fees to LeForge. F&H does not object to the recovery of the court filing fee of $350; thus, the court will award that to LeForge.

### b. Striking the Request

As stated above, F&H argues that the court should use its authority to strike the requested fees due to an alleged lack of good faith in her affidavit. *See Alexander v. Caraustar Indus., Inc.*, 930 F. Supp. 2d 947, 949-950 (N.D. Ill. 2013) (court has inherent authority to sanction a litigant that engages in conduct that abuses the judicial process). F&H notes that the total for the documents submitted by LeForge is $19,182.98, rather than $23,528.31.[3] There is no explanation given for the discrepancy. Additionally, several of the charges were submitted twice, thus, after removing duplicates the total was only $10,073.89. Furthermore, several of the documents submitted were for expenses arising before this litigation despite LeForge's affidavit stating the expenses were incurred during the litigation. Finally, and perhaps most egregious are the four unexplained trips to Indianapolis, including a business trip in Warsaw, Indiana.

The court cannot chalk all of this up to simple confusion, but rather must find a lack of good faith on the part of LeForge. Her discrepancies are alarming. As such, the court agrees that her recovery should be cut. The court will thus only allow LeForge to recover her court costs of $350, the amount actually spent and submitted for her flights to Indianapolis in June 2013 ($10), November 2014 ($267.20), and January 2015 ($494.20). Additionally, she may recover the costs to park in Ft. Myers for those trips ($22.00, $54.72, and $55.72 respectively) and her hotels in Indianapolis for those trips ($593.19)[4].

---

[3] Plaintiff did not file a reply addressing any of these allegations. As such, the court will accept the numbers calculated by Defendant as true and accurate and admitted by Plaintiff.

[4] LeForge did not submit a receipt for a hotel stay in January of 2015. Additionally, she used points for her hotel stay in June 2013.

## IV.    Conclusion

In conclusion, the court did not find F&H's objections to Mr. Murray's fees to be persuasive. As such, the court awards $37,415.00 in attorney's fees and $576.72 in costs to Mr. Murray. The court finds that Plaintiff has abused the system in seeking costs for expenses incurred prior to this case and not in pursuit of this litigation. The court thus limits her recovery to a total of $1,847.03. Therefore, the court **GRANTS in part** and **DENIES in part** Plaintiff's motion for attorney's fees and costs (Filing No. 147) and **GRANTS** Plaintiff's supplemental motion for attorney's fees (Filling No. 152).

**SO ORDERED** this 2nd day of June 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.